**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.M. and M.C.**

**No. 24-400** (Roane County CC-44-2023-JA-10 and CC-44-2023-JA-11)

**MEMORANDUM DECISION**

Petitioner Father J.M.[1] appeals the Circuit Court of Roane County's June 5, 2024, order imposing disposition pursuant to West Virginia Code § 49-4-604(c)(5) as to A.M. and M.C., arguing that the court erroneously based disposition on conduct not included in any petition or case plan and failed to impose the least restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In January 2023, the DHS filed a petition alleging that the petitioner neglected the children by failing to provide adequate housing and failing to protect them from the drug abuse of his spouse, K.M.[3] According to the DHS, the family lived in a camper with no hot water, no sewer service, excessive clutter, and trash throughout. In February 2023, the court held an adjudicatory

---

[1] The petitioner appears by counsel Joseph W. Hunter. The West Virginia Department of Human Services appears by Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Rebecca Stollar Johnson appears as the children's guardian ad litem ("guardian"). Respondent Mother C.C. appears by counsel Tanya Hunt Handley.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The petition included two other children who are not at issue here. Additionally, the petitioner is not M.C.'s biological parent but exercised custody of that child and was determined to be her psychological parent in a prior proceeding. Further, K.M. is not the children's biological mother but lived in the home.

hearing at which the petitioner stipulated to failing to provide the children with adequate housing. As such, the court adjudicated the petitioner of abusing and neglecting the children.

In May 2023, the court held a dispositional hearing at which it noted receipt of the petitioner's written motion for a post-adjudicatory improvement period. In the resulting order, the court stated that it was "inclined to grant [the petitioner] a Post-Adjudicatory Period of Improvement" but granted leave for the DHS to file an amended petition addressing the petitioner's substance abuse. In addition, the court terminated K.M.'s parental rights to two children who are not at issue here.

In June 2023, the DHS filed an amended petition alleging that the petitioner abused substances to the detriment of his parenting ability. At the following adjudicatory hearing, the petitioner admitted to abusing substances. In the resulting order, the court adjudicated the petitioner of abusing and neglecting the children on this basis. The court noted receipt of a signed family case plan outlining the terms of a proposed post-adjudicatory improvement period specifically "aimed at remediating the conditions of abuse and neglect alleged in the Petitions," and the petitioner verbally acknowledged his understanding of and responsibility to abide by those terms. The court then granted the petitioner a post-adjudicatory improvement period, the terms of which required, among other things, that the petitioner participate in therapy to address his trauma, depression, and anxiety; "refrain from associating with people who abuse drugs, engage in criminal activity, have a history of domestic violence, or have [Child Protective Services ("CPS")] involvement to ensure to safety and well-being of the children"; comply with updates to the family case plan, directives of the multidisciplinary treatment team ("MDT"), and recommendations of service providers; and participate in visits with the children.

At a December 2023 hearing, the court reviewed the petitioner's improvement period and granted him a ninety-day extension. However, in January 2024, the DHS and guardian jointly moved to suspend the petitioner's unsupervised visitation after learning that the petitioner remained in contact with K.M. despite being told by the MDT that continued contact with her was prohibited by the terms of his improvement period. In addition, the DHS and guardian alleged that the petitioner posted derogatory comments to social media about discussions in MDT meetings, indicating that he could not "recognize the importance [of] the discussions in the MDT relating to [K.M.] or refuse[d] to recognize said importance." Further, the DHS and guardian claimed that the petitioner failed to abide by the medication recommendations of mental health professionals. The court granted the motion and suspended the petitioner's unsupervised visitation.

In February 2024, the DHS moved to revoke the petitioner's improvement period and terminate his parental rights, claiming that he was still contacting K.M. on social media and failing to abide by medication recommendations. Due to these issues, the DHS asserted that the petitioner failed to successfully complete his improvement period and, therefore, failed to substantially correct the issues of abuse and neglect. The court did not rule on the DHS's motion, and the record shows that the petitioner continued contacting K.M. through social media and refusing to take his prescribed medication over the next several months.

At an April 2024 dispositional hearing, a CPS worker described the petitioner's improvement period as "a roller coaster" due to his continued contact with K.M., outbursts on

social media about the proceedings, and failure to take his prescribed medication—issues that had been repeatedly addressed at MDT meetings. The worker testified that while the petitioner completed parenting services, he did not implement what he learned. The CPS worker confirmed that the petitioner's improvement period statutorily expired in March 2024. Next, the petitioner admitted that he was inconsistently taking his medication but claimed that he struggled to get timely refills. He further admitted that he made inappropriate and aggressive social media posts but that he did so while unmedicated. In the resulting order, the circuit court opined that disposition pursuant to West Virginia Code § 49-4-604(c)(5) was "most appropriate", as the petitioner was unable to provide for the children's needs at that time. The court also noted that the petitioner admitted that K.M. was an unsuitable caregiver for the children. The court found that continuation in the petitioner's home was contrary to the children's best interests, that the DHS had made reasonable efforts to preserve the family, that the DHS offered the petitioner services throughout his improvement period, and that the children would achieve permanency by remaining with their mother. The court then imposed disposition pursuant to West Virginia Code § 49-4-604(c)(5). It is from the dispositional order that the petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that disposition pursuant to West Virginia Code § 49-4-604(c)(5) was inappropriate because the court considered allegations of conduct not included in any petition or case plan.[5] This is simply not the case, as the conduct to which he refers was contemplated by his case plan and the terms of his post-adjudicatory improvement period which required, among other things, that he refrain from associating with individuals who used drugs or had CPS involvement, participate in mental health treatment, and abide by the directives of service providers. While the petitioner claims that he was "fully compliant with his period of improvement," he consistently ignored the directives therein by continually associating with K.M., an individual whose parental rights were terminated due to substance abuse, even after the MDT warned him multiple times that associating with her was a violation of his improvement period terms. In further violation of those terms, the petitioner failed to take his medication, as recommended and prescribed by his therapist. Critically, West Virginia

_____

[4] M.C.'s father's parental rights were terminated in a prior proceeding. The mother's parental rights remain intact, and the children's permanency plan is to remain in her care.

[5] We note that the court's dispositional order purports to "terminate" the petitioner's custodial rights, a disposition governed by West Virginia Code § 49-4-604(c)(6). Even on appeal, the parties refer to the court's disposition under West Virginia Code § 49-4-604(c)(5) as a termination of his custodial rights. We stress, however, that the court did not make the requisite findings for termination under West Virginia Code § 49-4-604(c)(6), and we therefore review this matter and the parties' arguments with the understanding that the court was precluded from terminating any of the petitioner's rights.

The petitioner also argues that the circuit court erred by terminating his improvement period. However, the petitioner's improvement period had statutorily expired prior to the court's April 2024 dispositional hearing. Thus, the petitioner's argument is meritless.

3

Code § 49-4-610(4)(A) requires that "the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." Further, we have explained that "'failure to participate' in [an] improvement period" is "a statutorily-recognized basis upon which this Court regularly affirms termination of parental rights." *In re K.L.*, 247 W. Va. 657, 667, 885 S.E.2d 595, 605 (2022) (citing W. Va. Code § 49-4-604(c)(6) and (d)(1)-(3)). Although we recognize that the court did not terminate the petitioner's rights under West Virginia Code § 49-4-604(c)(6) here, this evidence is nonetheless relevant to the court's determination that the petitioner was presently unable to adequately provide for the children's needs. Furthermore, the circuit court complied with West Virginia Code § 49-4-610(2)(E)[6] by accepting the DHS's family case plan.[7] The DHS complied with the same, as well as Rule 28 of the Rules of Procedure for Child Abuse and Neglect Proceedings, by formulating and submitting that case plan, which included specific terms and measurements of those terms. Notably, at no point did the petitioner object to the terms of the case plan and, instead, affirmatively acknowledged that he understood his responsibility to achieve the goals set forth therein. Because the petitioner's conduct violated the terms of his improvement period to which he did not object and he identifies no error in the circuit court's implementation thereof, he cannot prevail on this basis.

The petitioner also argues that the circuit court erroneously found that there were no less restrictive alternatives to disposition under West Virginia Code § 49-4-604(c)(5) because he was "willing to participate in any service necessary to be a fit parent for his children." We disagree. As discussed above, the petitioner demonstrated his unwillingness to participate by violating the terms of his improvement period. The abovementioned evidence of the petitioner's failure to comply with services and refusal to follow the directives of the MDT supports the court's conclusion that he was presently unable to provide for the children's needs. Moreover, the petitioner does not challenge the court's findings that continuation in his home was contrary to the children's best interests, that the DHS made reasonable efforts to preserve the family, that the DHS offered the petitioner services throughout his improvement period, and that the children would achieve permanency by remaining with their mother. *See* W. Va. Code § 49-4-604(c)(5) (permitting

---

[6] That subsection governs post-adjudicatory improvement periods and reads as follows: "The order granting the improvement period requires the department to prepare and submit to the court an individualized family case plan in accordance with section four hundred eight of this article." While we recognize that the court's order should ordinarily require the DHS to submit a family case plan, the DHS submitted a signed family case plan at the hearing, thus obviating the need for the court to order the DHS to submit the same.

[7] We recognize that West Virginia Code § 49-4-610(2)(B) requires the court to "make[] a finding, on the record, of the terms of the improvement period." While we cannot address the circuit court's compliance with this particular statutory provision because the adjudicatory hearing transcript was not provided, there is a "presumption of regularity of court proceedings in courts of competent jurisdiction that remains until the contrary appears." Syl. Pt. 6, in part, *Sowards v. Ames*, 248 W. Va. 213, 888 S.E.2d 23 (2023) (quoting Syl. Pt. 2, *State ex rel. Scott v. Boles*, 150 W. Va. 453, 147 S.E.2d 486 (1996)). In the absence of affirmative evidence indicating that the circuit court failed to make the requisite findings on the record, we presume it proceeded with regularity and in compliance with relevant authority.

4

disposition under this subsection upon these findings). Accordingly, the petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 5, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: July 30, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV